Your Honor, may it please the Court, Giancarlo Vargas for the appellant William Dunne. I'd like to reserve two minutes of my time for rebuttal. The District Court erred in holding that it lacks subject matter jurisdiction over this case. The Court had federal question jurisdiction because Mr. Dunne stated claims under federal law, the Administrative Procedure Act, about a federal agency violating federal regulations. The Court was also wrong to hold that Mr. Dunne did not state claims to compel agency actions. Under APA 706-1, a plaintiff states a claim that they identify discrete agency actions that are legally required that have been unlawfully withheld or unreasonably delayed. Mr. Dunne has made that showing here. Counsel, would you direct your attention to the question that was sent in the order about standing? Yes, Your Honor. So there is a concrete injury every time that Mr. Dunne does not receive a response within 20 days as the regulations require at the BP-9 level. Actually, I have a question about that as well because as I understand the procedure, no response is equivalent to a denial which can be appealed to the later level. So what would be different? Your Honor, the difference would be getting a true response at the BP-9 level. So the deemed denial is not equivalent to a real denial. Why not? So I point to the program statement where the warden is told that they must not only give a grant or a denial, but they also must state the reasons that they're giving the decision. That's part of the process that Mr. Dunne is entitled to when he gets the response. And I'll highlight also there's a timeliness thing here as well where a BP-9 is due within 20 days of a complaint being filed. The additional 30 days to file a BP-10 and potentially get a response back, that is different. And I'll just highlight one of the BP-9s Mr. Dunne filed and did not get a BP-9 response to. He complained about blown cell lights off for two weeks. That's a concrete injury that the difference in 20 days versus 50 days, that's real. And I'll also point to the regulations. And so for that one, did he get any response at any point? No, Your Honor. So then did he appeal that? Your Honor, I'd have to look at his chart to see exactly if he appealed this particular one, but I believe he did. So are you saying that the injury is that it took 50 days to be able to appeal instead of 20 days to be able to appeal? No, Your Honor. That was just clarifying why the response at the BP-9 level is distinct from getting a response later on to the BP-10 level. The injury is, you know, the concrete injury underlying the procedural injury is what he's complaining about. So the cell lights being off or another complaint getting a face-planting shakedown. Those might be injuries, but if a lack of response counts as a denial, if we think the prison would have just denied it anyway, what is the difference for him? I still don't really understand the answer. Your Honor, I would just point this court to Clements v. Airport Authority of Washoe level, and even if you can win a full relief on your underlying substantive claim on an appeal, that doesn't change the fact that there is, you know, a violation of due process or a violation of a procedural right down below. And that is the case here. Just because Mr. Dunn can chase that appeal at the BP-10 level doesn't mean that the warden is causing an injury when he doesn't follow his obligation to give a response that under the program statement should have not only a yes or no but also reasons for why the warden is giving that response. But it seems to me that the existence of the procedure allowing an appeal when there is no response undercuts the idea that a response is required. Otherwise, there wouldn't be such a provision, it seems to me. So why isn't it a permissible option for the warden to say, you know, hey, I'm busy, and I know these folks can appeal on up, and I just don't have time to deal with all these complaints, it seems to me that that's not really a violation as much as an option. Your Honor, I'll point to three different places in the regulations that show that it is very much a violation when the warden doesn't get – does not give a response. So first, 542.18, it says the inmate may treat silence as a denial. It doesn't say that the warden can make that inference. And it's because the silence as a denial is a provision meant to protect Mr. Dunn and inmates in their pursuit of an appeal. I'd also point to 542.17. But that – isn't that exactly the point? It protects him. So why doesn't that eliminate any injury? It does not eliminate any injury. And I was pointing out to the fact that it does not obviate the warden's responsibility to give a response in the first place. There is a duty. And the other place I'd point to for that is 542.17a and 17b. There, the warden is actually given express permission in the regulations to treat – to give silence as a response if a complaint is abusive, it's obscene, or it's not in accordance with this part. However, 542.17b, the very next provision, says in that instance, the warden still has to provide written notice to the prisoner explaining why they're not accepting that complaint. Counsel, as a matter of practice, what is in the denial? Is it just a denial or is there a reason for the denial? I'm sorry, Your Honor, a denial? When a warden denies a complaint, is that – what is traditionally provided? Is it just denial or is there a reason for the denial? Your Honor, it's not entirely clear from the face of Mr. Dunn's complaint what it traditionally is. But under the program statement, the warden is supposed to give a full and complete response that includes both the denial or grant of relief and then stated reasons for why they're – I want to – Oh, I'm sorry. Just one follow-up. Then on appeal, if silence is treated as denial, how is the appellate board's – what's the – what reasoning do they impute to that denial? Do we know? We don't know, Your Honor. And that's, I think, also part of the reason why this is a real injury. 542.15 requires Mr. Dunn to attach his BP-9 response when he files his BP-10 and BP-11 appeals. Presumably, that helps with the investigation at the higher levels. But if Mr. Dunn is not getting that response, that's a missing part of his record  Right. And then the appellate board has to presume or speculate or why the denial happened versus – okay. Exactly, Your Honor. I wanted to go back to the section that you just cited about the abusive complaints. I may be wrong about this, but I understood those to be situations in which the warden could refuse to accept a complaint, which seems to me distinct from accepting a complaint and allowing time to elapse. Am I incorrect about that? Your Honor, I believe you are incorrect about that. I think it is the warden can reject without a response, but I think they still have to accept the BP-9 complaint. Regardless, I think the fact that the wardens empower the warden to treat silence as a response in that instance, but they still have to provide written notice to Mr. Dunn whether or not they accept the complaint. 542.17b says they have to give written notice to Mr. Dunn explaining why they're not accepting his complaint or rejecting it with silence, because that's part of the procedural right that Mr. Dunn is entitled to, a reasoned decision when he files the BP-9 complaint. Can I ask one merits question before we run out of time? So the magistrate or the R&R did not include 1331 as a subject matter jurisdiction. Why not? I mean, so that's – I understand that's what you're claiming now, 1331 is the avenue for subject matter jurisdiction. Why didn't the magistrate consider that? Your Honor, we're not sure, but because it appears on the face of Mr. Dunn's complaint.  He cites the 1331. He cites to do versus Gonzales, which states the principle that 1331 gives the subject matter jurisdiction for an APA claim. So the court had federal question jurisdiction and should have acknowledged that. Was that lodged in the objections to the R&R? I believe so, Your Honor. But then even if he hadn't cited to 1331, these are federal I also have some more questions, so we'll still give you your rebuttal time, but as we ask questions, you can keep answering. So the petition lists some examples of requests that were denied for what Mr. Dunn claims are just arbitrary reasons, like things that are just wrong. Are those in the petition for the purpose of challenging the prison's policies and practices, or are those in the petition to individually challenge each of those denials at this point? There's two reasons why they're there, Your Honor. First is challenging the individual discreet failures to provide responses or provide receipts. And then also it's there on remand if the warden wants to plead exhaustion as an affirmative defense. These are data points showing that there's not a truly available administrative remedy at Victorville right now that Mr. Dunn would have to exhaust for each of these complaints because he's seeing more than half of his BP-9s getting rejected without a response. So that second one is about the practices in general. But going back to the first, so you said he is trying to challenge these individual denials. So are they moot at this point, though? I mean, some of these things happened a long time ago at this point. Is he actually trying to litigate each of these now? And so you're asking for a remand to litigate each of those? Yes, Your Honor. We'd ask for a reverse remand so he could litigate these claims. And it would look like it would be a case-by-case or claim-by-claim distinction. So some of his claims definitely do survive, you know, things about $282 of wages being lost or being subjected to a face-planting shakedown. These are injuries that would continue on. Potentially some complaints that are about institution conditions that have passed, maybe those would become moot. But it would be a complaint-by-complaint basis, Your Honor. And so what are you asking us to do right now? Your Honor, we're asking that you hold that there was federal question jurisdiction for his APA claims, hold that he did state a claim under APA 7061 to challenge these four different types of discrete agency actions that the warden withheld on dozens and dozens of occasions, and then also hold that Mr. Dunn did state these 7062A claims that two of the warden's policies were arbitrary, capricious, or not in accordance with law. And then remand so that Mr. Dunn can proceed to summary judgment, go on to trial to prove out these claims. Okay, so that list did not include the thing I was just asking about as I understood it. So I was just asking about the ones that you say are arbitrary denials, not lack of denial, but actual denials. You have some of those, and I think those are 7062 claims, right? Yes, Your Honor. I guess those would be 7062 claims for the arbitrary denials on each of them. Okay, so in your list of what we should do, what do you want us to do with those? I would love to add those as well and remand that he can proceed those claims. And so you're not asking us, though, are you asking us to parse which of those should proceed and which of those should not proceed? Or you would just want us to say there's subject matter jurisdiction over the APA and remand the whole thing? Your Honor, I think to go on that complaint by complaint basis, I think remanding to the district court to go through these individual complaints, that would be the appropriate course here. So are there any merits issues other than jurisdiction that you want us to reach? Your Honor, the fact that he stated the APA 7062a claims challenging the one-at-a-time rule and also this proof of informed resolution rule as well, that would be a merits decision. I have another question. Sorry. The one-at-a-time rule, has that, is your client alleging that that rule has actually prevented the filing of any complaints? Yes, Your Honor. So I would point you to SER 46, where he's identified three BP9s and nine BP8s that were rejected on account of the one-at-a-time rule. But then he's also complained more generally in his complaint about BP8s and BP9s being rejected on account of the one-at-a-time rule, not specific instances. But yes, he has identified times where the one-at-a-time rule has prevented him from using the administrative remedy program at Victorville as he's allowed to do. So with that, if there are no further questions, I'd like to reserve the reminder of my time for rebuttal. You'll still get two minutes. Thanks. Thank you. Good morning, Your Honors. May it please the Court. Assistant United States Attorney Yujin Chun on behalf of Respondent Worden. This is a case about a writ of mendamus. Mr. Dunn does not have a legal entitlement to the things that he is seeking in this writ, which includes, for example, detachable receipts on perforated paper. Why is it not an APA claim? I mean, he could have pled mendamus and the APA, and then you could say mendamus isn't necessary because APA. But I don't understand why this wouldn't be an APA claim, especially because he was per se. Your Honor, as the Court pointed out earlier, the District Court did not consider whether there was an APA claim to begin with. But that's why we have appellate courts, right, to figure out whether there is or not. And in this case, Mr. Dunn had explicitly disclaimed that he was making such a claim. He actually stated in his opposition to the motion to dismiss in question that he was not making a claim for declaratory and injunctive relief to compel agency action, and that he was only seeking a writ of mendamus. Now with that... And where is that in the record? Your Honor, it's in the court's record 64. That looks like a... Oh, wait, I must have the wrong bench book because that doesn't seem right. So, Your Honor, yeah, it's not in the supplemental excerpts, but it's in the court's record at docket 64. And in the first paragraph... Wait, are you saying it's not in the excerpts of record? No, Your Honor, it's in the court's record, Your Honor. What do you mean by that? The district court docket? Yes, Your Honor. Okay, so why did you not submit it to our court if this is a key part of your argument? It is not, Your Honor. When the case was first submitted to the appellate court, Mr. Dunn was representing himself. And after he submitted his papers, we submitted a supplemental excerpt as required for pro se plaintiffs. And later on, when the APA claims were brought up, we did make the argument that those are being made for the first time on appeal. In retrospect... That's a different argument than he affirmatively waived them. So I feel like you may be... Why didn't you affirmatively waive the affirmative waiver argument by not giving us the material? Your Honor, we do regret that that was not submitted. But I do believe that this does not affect the court's decision to affirm because the district court did consider the APA argument a little bit. They did discuss that to the extent that Mr. Dunn might have jurisdiction outside of the mandamus jurisdiction, he still could not state a claim. And as the court pointed out, the APA action for compelling agency action, that analysis is very similar to a mandamus action, especially where the relief sought is the same. But he also has... So there's two types of APA claims. There's withholding of agency action that's required, and then there's actual agency action that's done in an arbitrary and capricious way. And he's arguing the second thing, at least now, and that does not overlap with mandamus. That's correct, Your Honor. And the APA actions under 7062A to set aside, those actions were found nowhere in the district court level, and they're being brought up for the first time. And if they're purely legal, why does it matter? Your Honor, it matters in the sense that this court cannot read into the petition something that was not there. The court cannot insert even elements of a claim, but for the court to insert actual claims into the petition will be for the court to act as an advocate for the plaintiff. Well, doesn't the complaint only need to state facts that would support a claim? Where's your case that says you have to actually, especially as a pro se litigant, correctly identify your legal claims in a complaint? Well, Your Honor, the answer is actually in two parts. The first part of it is that this is a petition for writ of mandamus, not a complaint. So the court can grant a petition, but the court does not grant a complaint. In that sense, the writ of mandamus analysis is jurisdictional, unlike the failure to state a claim in the case of a complaint. So that means that the court must find that the petitioner has a legal entitlement to the relief that he is actually seeking, or else a clear and certain claim does not exist. I'm a little unclear. So you're saying that the Dunn's pro se petition did not include the APA at all? No, he did not. He did mention the APA as a potential jurisdictional ground, and that's why the report and recommendation clarified that the APA and the Declared Great Judgment Act do not independently confer jurisdiction. So then why didn't the magistrate judge consider the APA in conjunction with 1331? Because, Your Honor, as I stated before, and I regret that it is not in the record, but in the opposition to the motion to dismiss, Mr. Dunn did explicitly disclaim that. But again, the analysis is the same. The original petition and the requests for relief that started SCR 72 specify a whole series of things that petitioner wants. But that does not include, as I recall it at least, the idea that there were particular decisions that were arbitrary and capricious. That is correct. It asks for future-oriented stuff of all kinds. That's correct. And that is correct. And in Norton v. Southern Utah, the court considered something like this and found that general compliance cannot be compelled via an APA or a mandamus action. So if Mr. Dunn were to seek, for example, a response or a receipt or a reversal of some sort of projection, he can bring that claim. But that is not the case before the court today. So wait, I'm looking at SCR 36, and it's very light, but it says this court also has the Administrative Procedures Act, APA. Why is that not enough? That is not enough, Your Honor, because the APA's jury— first of all, the APA does not confer jurisdiction. So the APA acts to act as a waiver of sovereign immunity and can be used in conjunction with the mandamus statute. So— Didn't he also cite 1331? Excuse me? He also cited 1331, didn't he? He discussed it. And again, when he was responding to the motion to dismiss, he did clarify that he made a  My concern is with the relief requested. Does that sort of supersede all of the sort of factual discussion, or is it something that we can consider should be added to? That's what I was trying to get at, I guess, with my earlier question. Yes, Your Honor. So the relief is extremely important because it is a petition for writ of mandamus. And even if the court were to construe this as an AP action, the analysis is the same because the court must consider whether there is a discrete agency action that is required by law. So that analysis necessitates the analysis of what is being asked of the court. So if the court were to, for example, remand to reverse some of these specific things, by that the court would actually be denying the writ because that is not what he asked for. And I will— So I'm looking at SCR 34, which is labeled Petition for Relief in the Nature of Mandamus. That's his petition, right? Yes. And then if you look at the bottom of 36, it says, while the APA does not confer subject matter jurisdiction by itself, the APA, in conjunction with 28 U.S.C. 1331, gives federal courts—I can't read the rest, but that's it. Is that the whole ballgame? It says it right there. Well, we're going off of what the district court understood the petition to read. And even though he— That's it. It reads that exactly. Am I reading that wrong? I mean, I would disagree with that reading because I do believe that he brought that up as a jurisdictional point without making the actual APA claim. So— But as a pro se litigant, don't we read it generously? I mean, this is a filing in court with the right arguments. Yes, I understand that, Your Honor. And we're not opposed to the court liberally reading this petition to include an APA claim to compel delayed agency action. But again, he would still fail to state a claim under that because there is no discrete agency action to compel. Is that a merits issue, though? Is that a subject matter jurisdiction question? That would be a merits issue, Your Honor. So it seems like you'd be okay with us remanding to consider the merits? No, Your Honor, because the court, of course, can affirm for any reason. And if the court were to do the analysis of whether an APA claim would lie—and it is very easy for the court to do so because, again, the analysis is the same—the court must consider whether there is a discrete agency action that the court can compel here. And with respect to the specific things that he's asking for, that's not what he's asking for. So for some of the things he's saying, no one ever responded to me. Why isn't that asking for an agency action that was withheld? Because he's making an allegation. He's not making that request in this lawsuit. So he can make an allegation that things have been happening, but he's not actually asking this court to get those receipts. What he's seeking is a complete overhaul of the system at Victorville. But couldn't he be asking for both? I do believe that it would be unreasonable to read the petition to be asking for both. I do recognize that one could read it to allege certain things. But in terms of what the petition is asking for, it is asking for a writ of mandamus. And for a writ of mandamus, it is jurisdictional analysis to take a look at whether the petitioner has legal entitlement to what he is actually asking for. Let me ask you about that specifically because one of the arguments that an opposing counsel made was that the proper reading of the regulations and program requires an answer for every complaint that is filed. What is your response to that? Your Honor, that is not true. And as the court pointed out earlier, the reason why we have that provision where the inmate can take a lack of a response as a denial is to provide for situations such as this. So that if the prison is unable to provide a response within the allotted time, that it does not get in the way of the process for the inmate. And Your Honor, I did want to briefly discuss... Could you address the standing issue? So I understand you don't want us to talk about any of this, but if we assume it's before us whether refusal to respond at all has occurred and that he's asking for some relief for that, do you think there is an injury when the prison fails to respond? Your Honor, the response is that there is no injury in fact as to established standing. He did not file this lawsuit as a result of being denied a particular response. And there's no legally protected concrete and particularized interest in what he is seeking. Why not? Because it is not up to any inmate or any person to create an administrative remedies program of their own design. Okay, well, let's put aside the way you want us to read this petition. Let's assume that he is asking for us to order the prison to respond to the requests that were not responded to. Would he have standing to do that? Let's just assume that is what he's asking for for a second. Would he have standing for that? With respect to the receipts, no, Your Honor. As discussed before, because he can take a lack of a receipt as a denial and move on to the next level, there is no injury. What happens to a non-response when it is appealed? Does the next layer up have the opportunity to investigate and look at it on the merits? Yes, Your Honor. And with respect... What happens to the silence below? What do they construe that as? It would be construed as a denial and... For what reason would they construe it? For the fact that it was not responded to. So they would recognize that. Substantively, what can they take away from the denial? There are no merit or there's like not ability to remedy it or... I do not believe that it signifies anything for the next level on why there may not have been a response. Why there would have been a denial? Because there's many reasons why something could be denied. I just... If all you have is silence and you're left to speculate why it was denied and why isn't that not an injury in itself? So in that case, the next level would look at the merits of the complaint and then decide. So they look at it de novo, is what you're saying.  Okay. And where... Is there somewhere in the record that explains that the next level can investigate? I don't think that I can point specifically to that. But the policies provide that it can be appealed to the next level. And I haven't found anything that suggests that there wouldn't be. Okay, but you just told us there would be. So that's a lack of not. It doesn't mean there necessarily is. So is there something in the record that speaks to this? I do not have that in front of me, Your Honor. But with respect to the lack of a response, all the requests are logged online. They're logged on Sentry. And at any point, inmate can get a copy of the log. And in fact, Mr. Dunn did retrieve a copy of the Sentry log for himself as well. So there is a record being made. And if at any point, if the inmate does not receive a receipt, and then he feels that he needs one, he can actually always request the log, which would contain the same information. And on top of that, he can also... There is an intranet system. So they don't have access to the intranet, but there is an intranet system in which the inmates can email the administration. So that is often used to prove that a request had been made and that there was attempt at resolution. So I'm sorry to keep you up there with questions, but I asked earlier about the one-at-a-time rule. Do you understand that rule to have the effect of preventing the filing of another complaint? So no, Your Honor. The one-at-a-time practice, first of all, is not a rule. It is in the complex supplements. It's a supplement for that complex specifically. And it states that ordinarily, only one form will be issued at a time. And it is actually not construed to prohibit the filing of a grievance just because an inmate already had a grievance. And the record is clear that that is the case because Mr. Dunn has been filing many grievances, more than one per week. So basically, if I understand your response correctly, and as I understood it from looking at it, it simply means that you can't amass a whole lot of things. I have 15 things I want you to think about. You have to do one at a time. Is that what it's about? No, that is incorrect, Your Honor. So what does it mean then? So the rule means that if an inmate has submitted a grievance for a form for a specific grievance, they cannot then submit yet another form for that exact same grievance. Yes, but I do recognize... More like claim preclusion then. Yes, Your Honor. And I do recognize that in the record, it appears that while some of the rejections were with respect to claims that he had previously filed, some of them were not. And this is consistent with what Mr. Dunn had stated in his petition, which is that he's calling it this counselor's rule. He's not calling it a prison-wide practice. And so to the extent that one counselor may be misinterpreting or misapplying this rule, that is a completely different issue. It's certainly not an agency action. But as the one-at-a-time practice stands, first of all, it is not a rule. The word ordinarily is in there. It is not a definitive statement. And it is also part of the local procedures. And I'm well over my time. Does the court have any other questions? Thank you, Your Honor. The court should defer. Thank you. We took the other side over. So let's put three minutes on. Your Honors, first, for the APA 7061 claim, these four duties we've identified in the regulations are discrete and legally required. And Lujan, Norton, I'll point to Norton. In that case, the Supreme Court is talking about you can't force general compliance with a land withdrawal program that consists of 100-plus page land use plans. That is not this case. We have four regulations that are one sentence each saying the warden shall provide a response, provide a receipt, conduct an investigation, and attempt to inform the result of complaints. But that's all merits questions, right? Or that has nothing to do with jurisdiction? This was for the purposes of stating a claim, Your Honor. I just wanted to highlight that those duties. We didn't even get that far below. Yes, Your Honor. The next point I'd like to make is that the remedy that Mr. Dunn asks for in his complaint is irrelevant to determining whether the court had jurisdiction or whether Mr. Dunn stated a claim. So Federal Rule of Civil Procedure 54C says the court will give the remedy that Mr. Dunn is entitled to. So the fact that Mr. Dunn has asked for some relief that goes beyond the exact text of 28 CFR Part 542 is irrelevant to determining whether he stated a claim. Does it matter that he styles it a petition for mandamus and he does not style it a complaint? Your Honor, no. It does not matter. As a pro se litigant, Mr. Dunn only needs to plead a combination of facts that would give rise to the claim. And here, he cites APA 7061 within his initial complaint. He also lays out the facts that there were discrete agency actions that were legally required that were not carried out on. So he has stated that claim. And the fact that as a pro se litigant, he styled it as a mandamus petition is irrelevant. A third to the standing, I just want to highlight again, 30 times Mr. Dunn did not receive a BP-9 response. Another reason why we can't assume these are equivalent to a denial is that we can infer these could have been grants of relief had Mr. Dunn actually received a response as he was entitled to. Can I ask? It seems like there's some factual development that needs requirement that requires us before reaching the standing question. Would you rather us remand that question back to the district court and let the district court figure out if they're standing for those claims? Your Honor, we think every single failure to provide a response is a concrete injury that there is standing for each of those. But the consequence of a failure to respond that you could appeal, it's unclear to us what exactly that means and what happens. And so I don't know. Would you rather us not rule on that and let the district court figure it all out? No, Your Honor. We think it is clear that there is a concrete injury in any case that Mr. Dunn doesn't receive a response. That is a concrete injury each time because it's depriving him of his procedural right to response within 20 days. The final point I'll make is that the one-at-a-time rule is not in accordance with law. Even though it says ordinarily it'll be applied, the fact that it's invoked in any instance to deprive Mr. Dunn of the ability to file a BP-8 means that the warden is not fulfilling his duty under 542.13a to attempt to inform the resolve each complaint Mr. Dunn could bring informally. And sorry, can you just respond to the prison's response about this that it's really only about the same grievance? That is not how I had understood it. Your Honor, that is not how I understood it either. It seems like the rule is intended to prevent Mr. Dunn from filing additional BP-8s if one is outstanding, regardless of what the issue is about. So any invocation of this rule to prevent Mr. Dunn from filing a BP-8 is not in accordance with law, with the warden's responsibility to attempt to informally resolve that complaint. So one thing I, in trying to figure out how that policy worked, I didn't see the petition explaining anything about like urgent issues. So like, is there anything in here where there's like a health concern that's urgent that the one-at-a-time policy prevented? Your Honor, I don't have his, I don't have them right in front of me. I believe there is one about him getting access to UV protection because Mr. Dunn has skin cancer. I think that would be a time-sensitive matter for a BP-8 form, but I would need to look at that. And that's one where you think the one-at-a-time prevented him from filing? Yes, Your Honor. I think at SER 80. With that, we'd ask for this court to reverse and revamp. Thank you. Thank you both sides for the helpful arguments. This case is submitted. And thank you for taking this case pro bono and doing a great job with it.
judges: GRABER, FRIEDLAND, BUMATAY